# In the United States Court of Federal Claims

No. 14-33L
(Filed:  September 25, 2015)

|  |  |  |
|---|---|---|
| BOYER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Rails-to-Trails; Fifth Amendment |
| v. | ) | Takings; Oregon Law; Scope of |
| | ) | Easement |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Mark F. ("Thor") Hearne, II*, Clayton, MO, with whom were *Meghan S. Largent*, *Lindsay S.C. Brinton*, *Stephen S. Davis*, Clayton, MO; *Debra J. Albin-Riley*, Los Angeles, CA, for plaintiff.

*Rachel K. Roberts*, Environment and Natural Resources Division, United States Department of Justice, Seattle, WA, with whom was *John C. Cruden*, Assistant Attorney General, Washington, DC, for defendant.  *Evelyn Kitay*, Deputy General Counsel, Surface Transportation Board, Washington, DC, of counsel.

**O P I N I O N**

**FIRESTONE**, *Judge*.

Pending before the court are cross-motions for summary judgment filed pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") by the plaintiffs and the United States ("the government").  The plaintiffs claim that their property was taken without just compensation by the government when the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU") under the

National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("section "1247(d)"), to allow the Union Pacific Rail Road and Benton County to negotiate a trail use agreement over a portion of rail corridor in Benton County, Oregon.  The plaintiffs claim that they own the fee underlying the rail corridor and that the government deprived them of regaining use of their property unencumbered by railroad easements when the STB issued the NITU.  Plaintiffs argue that the NITU gave rise to a taking of their property without just compensation, in contravention of the Fifth Amendment.

The government has moved for summary judgment with regard to certain plaintiffs on the grounds that these plaintiffs never owned the portion of the rail corridor at issue and thus there could not have been a taking of their property.  Specifically, the government argues that those plaintiffs who own land adjoining the rail corridor but who received their title with the railroad corridor "excepted" from their deeds never owned the fee underlying the rail corridor.  The government argues that, for this type of "excepted property," the underlying fee belongs to either the railroad or the prior property owner. The government contends that the following plaintiffs have deeds that "excepted" the rail corridor from their title:  John F. Boyer; John Boyer;[1] John and Susan Benninghoven;[2] Matthew Brandis and Shelly Moon; Rodney and Laura Howell; Brenda Hull; Hull-Oakes

---

[1] As to taxlot numbers 145290-00-0300 and 145300-00-0100.

[2] As to taxlot number 14521-00-00590.

Lumber Company;[3] Frank and Sharon Nusbaum;[4] Mark and Mechele Poorman; and William Sutton[5] (together, the "Excepted Plaintiffs").  In response, the plaintiffs argue that Oregon law provides, in connection with railroad rights of way, that the phrase "excepted" should be read to mean only that they, as the adjacent property owners, took title "subject to" the railroad's use but still own the underlying fee to the "excepted" portion identified in the deed.

The government has also moved for summary judgment with regard to claims involving certain segments of the rail corridor that the government contends were acquired by the railroad in fee simple absolute.  In the alternative, the government argues that any grants of easements to the railroad are broad enough to include trail use.  The plaintiffs that the government identifies as potentially implicated include: Chintimini Land Incorporated; Venell Farms;[6] Mark and Tina Miller; Walter Van Smith; Steven Schindler and Angela Hornaday; the Virginia Schrock Trust; the Greenberry Flyway; Goracke Bros.;[7] the Sarah Greene and Christen Killsgaard Living Trust; Robert K. Ballard; Peggy Goracke; Crocker Farms LLC; Daniel and Thomas Goracke, et al.;

---

[3] As to taxlot number 14609-00-01200.

[4] As to taxlot number 14613-00-00301.

[5] As to taxlot number 14615-00-00200.

[6] As to taxlot numbers 13510-00-01200, 13510-00-01600, and a portion of 13522-00-00100.

[7] As to a portion of taxlot number 13534-00-00400, all of 14504-00-00100, 14516-00-01200, and 14521-00-00501.

Sherrie Hopper;[8] the Bessie R.A. Jones Trust; Kevin and Kyleen McDaniel; John and Donald Benninghoven;[9] Florence Fulgham; David Virgil Baker; John Boyer;[10] Leslie and Susan Koltavary; The Rice Paddy LLC, the David C. Horning Trust; Jeffrey and Kathryn Goracke; Frank and Sharon Nusbaum;[11] Donna and Donald Oakes Trust;[12] Hull Oakes Lumber;[13] and Carole and David Hull. It is undisputed that, if the railroad owns the fee underlying the corridor, the NITU did not "take" these plaintiffs' land. The plaintiffs argue, in response, that under Oregon law the subject deeds did not transfer a fee interest to the railroad but only an easement for rail use.

Finally, the government has moved for summary judgment with regard to certain claims related to parcels that adjoin segments of the rail corridor that the government agrees involve grants of easements to the railroad on the grounds that the easements for these properties were not abandoned prior to issuance of the NITU and, thus, there was no taking. The plaintiffs that are potentially implicated include: Venell Farms;[14]

---

[8] As to taxlot number 14516-00-00902.

[9] As to taxlot number 14528-00-00100.

[10] As to taxlot numbers 145290-00-0102 and 145290-00-0200.

[11] As to taxlot numbers 14613-00-00300, 14613-00-00602, and 14613-00-00200.

[12] As to taxlot number 14614-00-00200.

[13] As to taxlot numbers 14609-00-00601 and 14615-00-00800.

[14] As to taxlot numbers 13522-00-00100 and 13522-00-00103.

Goracke Bros.;[15] Donald and Donna Oakes;[16] Sherrie Hopper;[17] Heidi Sutton, personal representative of Donald F. Benninghoven, and Susan Benninghoven, personal representative of the estate of John C. Benninghoven[18] (together, the "Easement Plaintiffs").  In response, the plaintiffs argue that, contrary to the government's contentions, the uses authorized by the NITU go beyond the scope of the easements granted to the railroad and as a result the issue of abandonment is not relevant.[19]

## I.    FACTUAL BACKGROUND

The following facts are not in dispute.  In the early 1900s, the Corvallis and Alsea River Railway and later its successor—the Portland, Eugene, and Eastern Railway—obtained the disputed property interests in land to construct the Bailey Branch and Hull Oakes Lead rail corridors in Benton County, Oregon.  See Pls.' Mot. Partial Summ. J. & Mem. in Supp. ("Pls.' Br."), Exs. B–FF; Def.'s Cross-mot. Partial Summ. J. & combined Mem. in Supp. & in Resp. to Pls.' Mot. (Def.'s Br.), App. 1.  The deeds used varied

---

[15]As to taxlot numbers 13534-00-00400 and 14516-00-00501.

[16]As to taxlot numbers 14614-00-00200, 14614-00-00600, and 14614-00-00700.

[17]As to taxlot number 14516-00-00500.

[18]As to taxlot numbers 14528-00-00100 and 14528-BD-00100.

[19] The government does not oppose summary judgment with regard to the below-listed plaintiffs, who the government agrees held the fee underlying the rail corridor and were entitled to have their property returned to them unencumbered under the terms of the easements granted to the railroad.  These claims all arise from the JB Starr deed.  ECF No. 34-3; ECF No. 45 at 37-38. These plaintiffs include: Margie and Ruben Butner, Paul Dyer, and certain parcels of Goracke Bros.  With regard to Goracke Bros., these parcels include: taxlot parcels 14516-00-01901, 14516-00-02000, and a portion of 14516-00-01200, only.  Summary judgment is therefore **GRANTED** for these plaintiffs in connection with the claims associated with the JB Starr deed.

considerably from each other.  Some of the deeds are entitled "right of way" or use the term "right of way" to describe the interest conveyed.  See Pls.' Br., Exs. Q–T.  Some deeds conveyed irregularly-shaped parcels described with a metes and bounds description, see, e.g., Pls.' Br., Ex. T, others conveyed a strip of land on either side of the centerline of an already-established or staked track on the grantor's property, see Pls.' Br., Exs. B–F.  In a few cases, the centerline itself was described using a metes and bound description, see Pls.' Br., Exs. Q–S.  All of the deeds at issue in this case use "across" or "over and across" to describe the interest granted.  See Pls.' Br., Exs. B–FF.  Except as noted, the deeds at issue did not contain express language limiting use of the land to "railroad purposes."[20]

The initial part of the Bailey Branch, from Corvallis to Alpine Junction, as well as the Hull Oakes line from Alpine Junction to Dawson, was constructed in 1909 and 1910 by the Corvallis and Alsea River Railway.  See Compl., Ex. 2 at 4.  The remaining portion of the Bailey Branch line was built by the Corvallis and Alsea River Railway's successor, the Portland, Eugene, and Eastern Railway in 1913.  See id.  Together, these portions represent the rail line at issue in this case.  See Compl. 4; Compl., Ex. 2 at 2.

The line was eventually purchased by Southern Pacific and later by Union Pacific.  See Compl., Ex. 1 at 3.  In 1993, the line was leased to Willamette and Pacific Railroad ("WPRR"), which operated the line.  See id. at 5.  The line was not maintained regularly

---

[20] In addition to those conveyances which the parties previously stipulated conveyed an easement, see supra note 19, the parties have also stipulated that the Watkins Deed (Plaintiffs' Exhibit K), conveyed an easement for railroad purposes.  See ECF No. 44.

and derailments occurred.  See id. at 5–6.  The line was embargoed by WPRR in 2007.[21]
See id. at 6–7.  Union Pacific and WPRR sought an exemption from the STB under 49
U.S.C. § 10502 and 49 C.F.R. § 1152.50 for the Bailey Branch from milepost 682.25,
near Greenberry, to milepost 671.58, near Monroe; and the Hull Oakes Lead from
milepost 673.21, near Alpine Junction, to milepost 680.06, near Dawson.  See id. at 2.
Together, this comprised a total of 17.86 miles.  See id.

In response to Union Pacific's petition, Benton County requested that the STB
issue an NITU stating that the railroad corridor was suitable for railbanking.  See Compl.,
Ex. 3.  Union Pacific then filed a statement that it was willing to negotiate with Benton
County for a trail use/railbanking condition.  See Compl., Ex. 1.  On September 9, 2011,
the STB issued the NITU.  See Compl., Ex. 4.  On March 4, 2014, Union Pacific and
Benton County filed a notice they had reached an agreement.  See Compl., Ex. 7.

## II.     DISCUSSION

### A.     Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute
as to any material fact and that movant is entitled to judgment as a matter of law." RCFC
56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue
is one that could permit a reasonable jury to enter a verdict in the non-moving party's

---

[21] A line is "embargoed" when a railroad ceases service as a temporary emergency measure
because it is unable to perform its duty as a common carrier. See ICC v. Baltimore & Annapolis
R. Co., 398 F. Supp. 454, 462 (D. Md. 1975).

favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 331 (1986).  In evaluating motions for summary judgment, courts must draw any inferences from the underlying facts in the light most favorable to the non-moving party and may not engage in credibility determinations or weigh the evidence.  Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Statutory Background and Governing Precedent

This takings case arises from the application of section 8(d) of the National Trails System Act (the "Trails Act") as amended by the National Trails System Act Amendments of 1983 and codified at 16 U.S.C. § 1247(d) ("section 1247(d)").  See generally Preseault v. Interstate Commerce Comm'n ("Preseault I"), 494 U.S. 1, 7–8 (1990) (concluding that the government must provide just compensation if it takes private property by authorizing recreational trail use of a railroad right-of-way).  Under the Trails Act, the STB has issued regulations concerning abandonment and discontinuance of service over rail lines, including regulations relating to railbanking pursuant to section 1247(d).  See 49 C.F.R. §§ 1152.1–1152.60.  To abandon a rail line or discontinue service over a rail line, a railroad must file an application for abandonment or discontinuance with the STB under 49 U.S.C. § 10903 or a notice of exemption under 49 U.S.C. § 10502 and 49 C.F.R. § 1152.50.

If a railroad proposes abandonment, a state, political subdivision, or qualified private organization may request to use the subject rail corridor for interim trail use and railbanking under section 1247(d).  See 49 C.F.R. § 1152.29(a).  In an exemption proceeding, if the railroad agrees to negotiate with the proposed trail operator, the STB will issue an NITU.  Id. § 1152.29(d).  The NITU suspends the regulatory proceedings and provides time for the railroad and third party to negotiate an agreement.  Id.  If the parties enter into an agreement, the STB proceedings are suspended and the rail operator may discontinue active rail service.  Section 1247(d) provides that interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."  16 U.S.C. § 1247(d).  Thus, the property remains within the national rail system and available for reactivation of rail service for the duration of the interim trail use.  If the rail operator and the proposed trail operator do not reach an agreement, the rail operator may fully abandon the line, subject to the satisfaction of other conditions that the STB may have imposed on the abandonment.  49 C.F.R. § 1152.29(d)(1).

In order to prove that a Fifth Amendment taking was effected by the issuance of an NITU, the plaintiffs must show that their "state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right of way to trail use."  Caldwell v. United States, 391 F.3d 1226, 1228 (Fed. Cir. 2004) (citing Preseault v. United States, 100 F.3d 1525, 1543 (Fed. Cir. 1996) ("Preseault II")).  The Federal Circuit has established a three-part inquiry to determine takings liability in cases involving the conversion of a railroad right of way to a recreational trail via section

1247(d): "the determinative issues for takings liability are (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement)." Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009).  To the extent there is a dispute regarding the nature of the property interest conveyed to the railroad, the issue must be resolved using the applicable state law.  See Preseault I, 494 U.S. at 16; Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 718 (Fed. Cl. 2011).

### C.    "Excepted" Property Under Oregon Law May Mean Subject to an Easement

The government argues that the Excepted Plaintiffs cannot establish a taking because the rail corridor was "excepted" from their deed and thus these plaintiffs do not own the rail corridor.  About half of the Excepted Plaintiffs' deeds (Pls.' Br., Exs. M, R, U, W, and EE) contained a clause which excepted the strip of land conveyed by the source deed at issue.  For example, the Howells' deed specifically excepts "a 60 foot strip deeded to the Corvallis & Alsea Railway Company May 8, 1911, and recorded in Book 53, Page 501, Deed records of Benton County, Oregon." Pls.' Br., Ex. M.  The other half (Pls.' Br., Exs. J, BB, and FF) excepted "the portion of said premises lying within the

10

Southern Pacific Railroad Right of Way," see, e.g., Pls.' Br., Ex. FF, or had very similar language following the description of the property conveyed by the deed.

The government argues that, under Oregon law, "[e]xcepting clauses are common in conveyancing instruments and generally have the effect of 'tak[ing] something out of the thing granted that would otherwise pass by the deed.'" Tri-Cty. Metro. Transp. Dist. v. Portland Gen. Elec. Co., 985 P.2d 222, 224 (Or. Ct. App. 1999) (citation omitted). In Tri-County Metropolitan Transportation District of Oregon v. Portland General Electric Company, the original grantor granted an easement to a railroad in 1908. Id. at 223. The original grantor's successor, Mr. Ray, granted another easement to the railroad in 1951 and, in 1960, conveyed the property to a corporation. Id. The conveyance to the corporation excepted "that portion of the . . . right of way" granted to the railroad in 1908, specified the net area, and provided that the deed was "subject to" the 1951 easement. Id. The Oregon Court of Appeals found that the portion of the railroad corridor excepted was owned by the estate of Mr. Ray and not by the assignees of the corporation. Id. at 224–25; see also Pioneer Res., LLC v. Lemargie, 27 P.3d 520, 522 (Or. Ct. App. 2001) (finding that an exception clause "thus removes from the description all standing and future merchantable timber, which is a property right that would otherwise pass by the deed" (citing State v. Tolke, 586 P.2d 791 (Or. Ct. App. 1978)). Based principally on the holding in Tri-County, the government argues that it is entitled to summary judgment with regard to the Excepted Plaintiffs.

The plaintiffs argue in response that the government's reliance on Tri-County is misplaced. The plaintiffs argue that when the Tri-County deed is read in context, it is

clear that the grantor was keeping for himself the property occupied by the railroad. According to the plaintiffs, when only rights of way are involved, Oregon law recognizes that the term "except" usually means that the property is "subject to" a specific easement that encumbers use of the property.[22]  The plaintiffs contend that this reading comports with the common law "strips and gores" doctrine of property followed in Oregon, which disfavors the creation of narrow strips of land that would be created when an easement is terminated.  Cross v. Talbot, 254 P. 827, 828 (Or. 1927) ("The rule itself is mainly one of policy … and its chief object is to prevent the existence of innumerable strips and gores of land, along the margins of streams and highway").

The court finds that the plaintiffs' reading of Oregon law is correct and that the deed in Tri-County is distinguishable from the deeds at issue in this case.[23]  Tri-County involved a very different situation in which the parties disputed who was entitled to the proceeds from the metropolitan transportation district's condemnation of a narrow strip of land on a farm.  See Tri-Cty., 985 P.2d at 223.  In that case, the balance of the excepting clause, in particular the reference to "net area," confirmed the conclusion that the grantor intended to convey title to everything except the land on which the railroad exercised its right of way.  Id. at 224.  The Oregon Court of Appeals held that in order to produce a net area there has to be a deduction of some acreage in the first place.  Id.

---

[22] The plaintiffs rely on the Principles of Oregon Real Estate Law, Form 6-9, published by the Oregon State Bar Association in 1995.

[23] The court's task at hand is to discern the intent of the original grantors.  See, e.g., Bouche v. Wagner, 293 P.2d 203, 208 (1956) ("Whether an instrument conveys ownership of land or only an easement depends upon the intention of the parties.") (citation omitted).

Therefore, the net area granted was "the total acreage minus the acreage subject to the [railroad's] right-of-way that Ray excepted from the grant." Id. However, in this case, the original deeds do not mention the net amount of acreage conveyed, and in such circumstances the word "excepted" is better interpreted to mean that the plaintiffs took title to their property "subject to" the railroad's interest.

This reading is confirmed by the Oregon Court of Appeals holding in Tolke, 586 P.3d at 796, in which the court held that "in the absence of a clearly expressed intent to reserve an interest in themselves, it seems far more likely that the only concern was to exclude the rights of the railroad from the general warranty of title." Further, the Tolke court agreed with the contention that the deed "must be construed as being 'subject to' the rights of the Railroad rather than as excepting the strip of land from the conveyance." Tolke, 586 P.3d at 795; see also Rall v. Purcell, 281 P. 832 (Or. 1929) (finding that "excepting" meant "subject to" where a clause specified that the excepted land was to be used as a roadway). In Tri-County, the Court of Appeals distinguished Tolke by mentioning that the Tolke court "examined the language of the excepting clause and concluded that it was reasonably capable of at least two different meanings," and in order to resolve the ambiguity, they "applied a constructional preference in favor of the grantee." See Tri-Cty., 985 P.2d at 224. In this case as well, the intent of the original grantors of the subject deeds is not clearly expressed, and thus in keeping in line with Tolke and Tri-County we construe the deeds in favor of the grantees to mean "subject to" the railroad easement. Moreover, this reading is consistent with the Oregon state law

"strips and gore" policy.  Accordingly, the court finds that the Excepted Plaintiffs own the underlying fee.

### D.    Most of the Deeds in Dispute Granted an Easement to the Railroad

The government also seeks summary judgment with respect to the plaintiffs with claims involving deeds which have not been stipulated as granting an easement.  The government acknowledges that these deeds do not by their terms state that a fee interest was granted to the railroad.  However, the government contends that, under Oregon law, deeds to a railroad that purport to convey a strip or parcel of land without an express limitation on use of the property for railroad purposes can convey a fee interest and did so in this case.  The plaintiffs rely on this same Oregon law to argue that the subject deeds, which expressly identify the interest conveyed as a "right of way," conveyed only easements to the railroad.

Both parties rely on the factors identified by the Oregon Supreme Court in Bernards v. Link, 248 P.2d 341 (Or. 1952), and Bouche v. Wagner, 293 P.2d 203 (Or. 1956), to support their arguments.  In those cases, the Oregon Supreme Court identified eight factors to determine whether a right of way or similar deed conveyed an easement or fee interest to the railroad.  These include:  (1) whether the parties named the interest as a "right of way" in the title of the document which would usually imply that only a "right" or easement and not a fee was granted; (2) whether in the body of the deed the phrase "right of way" is used to describe the interest, which would again weigh in favor of construing the deed as granting an easement; (3) whether the deed uses the phrase "over and across" to describe the interest which would also suggest that an easement was

14

conveyed and not a fee; (4) whether the deed mentions the possibility of reverter if the use stops, which would favor finding an easement; (5) whether the deed includes covenants to build structures such as fences, crossings, or cattle guards, in connection with the grant, which would indicate an easement was conveyed; (6) whether the strip is defined with precision, which if not would indicate an easement rather than a fee was granted; (7) whether the consideration paid for the grant was substantial or nominal, which if nominal would indicate that only an easement was conveyed; and (8) whether the deed uses the phrase "strip of land" to describe the interest, which would indicate that the deed conveyed only an easement and not fee title to the railroad.  Applying these factors, and based on the arguments presented, the court for the reasons that follow finds that an easement was granted to the railroad with respect to the deeds entitled "right of way" and the deeds that used "right of way" to describe the interest conveyed.

First, with regard to the deeds that were entitled "right of way," the court finds that only an easement was conveyed.  The Wilhelm (Pls.' Br., Ex. Q), Cartwright (Pls.' Br., Ex. R), J. Pfouts 56/167 (Pls.' Br., Ex. S), and J. Pfouts 56/529[24] (Pls.' Br., Ex. T) deeds are entitled "right of way" and also meet several other factors: they use "over and across" and "strip of land" to describe the interest, they require the railroad to build and maintain fences and crossings, and the deeds reflect that only nominal consideration was paid.[25]

---

[24] A review of this deed indicates that it describes a connecting point between railroad tracks. Therefore, the court finds that the nature of this deed is the reason why it does not satisfy several of the factors. Nevertheless, the deed is entitled "right of way" and the consideration listed is only nominal. Accordingly, the court finds that the deed granted an easement to the railroad.

[25] The government argues that the nominal consideration, as listed on some of the deeds, may not be the true consideration, and points to the Interstate Commerce Commission's valuation

Therefore, the court finds that they granted only an easement to the railroad.  The following plaintiffs have claims that are implicated by these deeds: Goracke Bros.;[26] John and Susan Benninghoven;[27] Kevin and Kyleen McDaniel;[28] John and Donald Benninghoven;[29] Florence Fulgham; Heidi Sutton, personal representative of Donald F. Benninghoven; and Susan Benninghoven, personal representative of the estate of John C. Benninghoven.[30]

Second, the Wilson (Pls.' Br., Ex. B), Smith (Pls.' Br., Ex. C),  Hurlburt (Pls.' Br., Ex. E),  Buchanan (Pls.' Br., Ex. F),  Zierolf (Pls.' Br., Ex. N), SA Starr (Pls.' Br., Ex. P), CB Starr (Pls.' Br., Ex. V),  and Dodge (Pls.' Br., Ex. Y) deeds use "right of way" to describe the interest, although they are not entitled "right of way."  The consideration listed in the deeds is more than nominal; however, other factors weigh in favor of determining that they grant an easement and not a fee.  All of the deeds use "strip of land" and "over and across" to describe the interest, and include a fencing requirement. The Hurlburt (Pls.' Br., Ex. E),  Buchanan (Pls.' Br., Ex. F),  SA Starr (Pls.' Br., Ex. P),

---

schedules drafted in 1916, which place a dollar value on the subject strips of land and are a better indication of what was paid. The plaintiffs dispute this contention and argue that there is no clear connection between the deed amounts and the railroad's records. The court agrees with the plaintiffs. Because they are not close in time to the deeds and they are not readily available documents, the court is not persuaded to look beyond the four corners of the deed.

[26] As to taxlot number 14521-00-00501.

[27] As to taxlot number 14521-00-00590.

[28] As to taxlot number 14521-00-00800.

[29] As to taxlot number 14528-00-00100.

[30] As to taxlot numbers 14521-00-00700, 14521-00-00702, and 14521-00-00703.

and CB Starr (Pls.' Br., Ex. V) deeds do not describe with precision the strip of land.  The CB Starr (Pls.' Br., Ex. V) deed includes a reverter clause, acknowledging that the rail corridor will revert to the grantor if the conditions of the grant are no longer met, establishing that a fee simple estate was not granted.  Therefore, the court finds that the previously listed deeds indicate that the intent of the parties was to transfer to the railroad only an easement, not a fee.  The following plaintiffs have claims that are implicated by these deeds: Chintimini Land Inc.; Walter Van Smith; Steven Schindler and Angela Hornaday; Virginia Schrock Trust; P. Goracke; Goracke Bros.;[31] Daniel and Thomas Goracke; Sherrie Hopper;[32] Bessie R.A. Jones Trust; David Virgil Baker; John Boyer;[33] David C. Horning Trust.

Next, the court considers whether the remaining deeds which do not contain "right of way" language transferred a fee interest or easement to the railroad.  All of the deeds at issue in this case use "across" or "over and across" to describe the interest granted.  The court has separated the deeds based on the consideration amounts.  As noted, the Oregon Supreme Court has held that the presence of the phrase "over and across the lands of grantors" weighs in favor of finding an easement.  See Bouche, 293 P.2d at 209; Bernards, 248 P.2d at 343.  Here, the vast majority of the deeds use the phrase "over and across" to refer to the pre-existing, or already-located, railroad track.  The CI Starr and

---

[31] As to taxlot number 14516-00-01200.

[32] As to taxlot number 14516-00-00902.

[33] As to taxlot numbers 145290-00-0102 and 145290-00-0200.

Bennett deeds describe the land conveyed as follows:  "A strip of land [] feet in width along the line of railroad as now located and staked out for a railroad by said grantee over and across the following described premises . . . ."  Pls.' Br., Exs. U, AA.  Ten additional deeds use similar phraseology, referring to "the line of the railroad" (Bailey (Pls.' Br., Ex. X)); "the center line of the railroad track" (Porter (Pls.' Br., Ex. D), Bruce (Pls.' Br., Ex. J), Howard (Pls.' Br., Ex. W), Mack (Pls.' Br., Ex. Z), Buckingham (Pls.' Br., Ex. BB), A. Starr (Pls.' Br., Ex. DD), Pool (Pls.' Br., Ex. EE), Malcolm (Pls.' Br., Ex. FF)); or "center line of the track" (Carver (Pls.' Br., Ex. O).  The Gregg deed (Pls.' Br., Ex. CC) uses the phrase "along the south line of the following described real property . . . ."  The Irwin, Hughes, and Foster deeds describe the land conveyed as:  "A strip of land sixty feet in width lying parallel to and adjoining the right of way for a railroad heretofore granted to the Oregon and California Railroad Company over and across the following described premises . . . ."  Pls.' Br., Exs. G, H, and I.

The government argues that the deeds which use the terms "over," "across," "along," or "through" may refer to the location of a pre-existing track or adjacent right of way, or a future railroad line, staked out at the time of conveyance and should not be construed to convey an easement.  The government notes that the Watkins deed, for example, states:  "A strip of land sixty feet in width running the entire length North and South across the following described premises . . . ."  Pls.' Br., Ex. L, and the Herron deed, which describes the property conveyed as: "A strip of land sixty feet in width over and across the following described premises . . . ."  Pls.' Br., Ex. M.

In response, the plaintiffs cite Egaas v. Columbia County, 673 P.2d 1372 (Or. Ct. App. 1983) (involving a rail easement obtained through condemnation), for the proposition that conveyances of property for purposes of constructing a railroad across the property are presumed to be easements and the language in all of the deeds referencing "over and across" implies a railroad construction and railroad use purpose and thus the conveyances should be read to convey easements across the subject properties. The plaintiffs also argue that their reading comports with the strip and gore doctrine followed in Oregon and discussed in Cross, 254 P. at 828.

The court finds that the "over and across" language used in these deeds favors the plaintiffs. It is clear from reading these deeds that they were granted to allow for railroad construction and use. The court finds that this view is confirmed by a review of the additional factors laid out in Bernards and Bouche. The Porter (Pls.' Br., Ex. D),  Bruce (Pls.' Br., Ex. J),  Herron (Pls.' Br., Ex. M),  Carver (Pls.' Br., Ex. O), Bennett (Pls.' Br., Ex. AA), and Pool (Pls.' Br., Ex. EE) deeds listed nominal consideration, used "strip of land" to describe the interest conveyed, and required fencing. Additionally, the Porter (Pls.' Br., Ex. D), Bruce (Pls.' Br., Ex. J), and Herron (Pls.' Br., Ex. M) deeds do not define the strip of land with precision. All these factors weigh in favor of determining that an easement, not a fee, was granted to the railroad. The following plaintiffs have claims that are implicated by these deeds: Venell Farms Inc.;[34] Mark and Tina Miller;

---

[34] As to taxlot numbers 13510-00-01200 and 13510-00-01600.

Greenberry Flyway, Inc.;[35] Matthew Brandis and Shelly Moon; Goracke Bros.;[36] Sarah

Greene; Rodney and Launa Howell; Robert K. Ballard; Crocker Farms LLC; Jeffrey and

Kathryn Goracke;[37] and William Floyd Sutton.

Lastly, the court finds that with regard to the remaining deeds which do not use

"right of way" language, and the consideration listed is substantial, there is a strong

indication that the parties intended to convey fee simple title to the railroad.  Although

the court has found that the "over and across" language should be construed to convey an

easement, the court finds that where consideration is substantial, the balance tips in favor

of finding a fee.  We agree with the government that the interest conveyed to the railroad

was a fee because where "right of way" was not used and consideration was not nominal,

the court is persuaded that the grantor was giving a fee.  Accordingly, the court

determined that there was a fee granted, not an easement, for the following remaining

deeds: Irwin, $120.75 (Pls.' Br., Ex. G); Hughes, $139.70 (Pls.' Br., Ex. H); Foster,

$285.75 (Pls.' Br., Ex. I); Watkins, $200 (Pls.' Br., Ex. L); CI Starr, $174.20 (Pls.' Br.,

Ex. U); Howard, $130 (Pls.' Br., Ex. W); Bailey, $500 (Pls.' Br., Ex. X); Mack, $60

(Pls.' Br., Ex. Z); Buckingham, $120 (Pls.' Br., Ex. BB); Gregg, $83.50 (Pls.' Br., Ex.

CC); A. Starr, $363.75 (Pls.' Br., Ex. DD); and Malcolm, $240 (Pls.' Br., Ex. FF).  The

---

[35] As to taxlot number 13522-00-00101.

[36] As to taxlot number 13534-00-00400.

[37] As to taxlot numbers 14613-00-00600 and 14613-00-00603.

following plaintiffs have claims that are implicated by these deeds: Venell Farms, Inc.;[38] Greenberry Flyway, Inc.;[39] Goracke Bros.;[40] John F. Boyer;[41] Leslie and Susan Koltavary; The Rice Paddy LLC; Frank and Sharon Nusbaum; Mark and Mechele Poorman; Donna and Donald Oakes Trust;[42] Hull Oakes Lumber Co.; Brenda Hull; Carole Hull; and David Hull.

### F.     The Easements at Issue Do Not Include Trail Use

Having concluded that eighteen of the subject deeds conveyed only easements to the railroad, and considering the parties' stipulations that several other deeds conveyed easements to the railroad, the court now turns to whether the easements at issue are sufficiently broad to encompass the trail use authorized in the NITU.  If the easements are broad enough to encompass trail use, the court will then have to examine whether the railroad abandoned the easements before the NITU was issued.

The government argues that the court should first decide if the railroad easements were abandoned under Oregon law.  See Def.'s Br. 38.  According to the government, if the railroad has not abandoned the rail corridor, regardless of whether an NITU was issued, there cannot be a taking.  The plaintiffs argue that the government has inverted

---

[38] As to taxlot number 13522-00-00100.

[39] As to taxlot numbers 13522-00-00401 and 13522-00-00801.

[40] As to taxlot numbers 13534-00-00400 and 14504-00-00100.

[41] As to taxlot numbers 14521-00-00600, 14520-00-00400, 145290-00-0300, and 145300-00-0100.

[42] As to taxlot number 14614-00-00200.

the court's inquiry and that abandonment is relevant only if the court concludes that the easements encompassed trail use. The court agrees with the plaintiffs that the government has inverted the court's inquiry. The court only reaches the issue of abandonment if the government prevails on the scope of the easement issue. As the Federal Circuit stated in Ellamae, "the determinative issues for takings liability are: (1) who owns the strips of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held fee simple unencumbered by the easement (abandonment of the easement)." Ellamae Phillips Co., 564 F.3d at 1373.[43] For the reasons set forth below, the court finds that the subject easements were not broad enough to encompass trail use.

---

[43] The government also argues for purposes of preserving the issue for appeal (Def.'s Br. ECF 45 at 39 n.30) that an NITU can never authorize uses outside the scope of an easement and thus issuance of an NITU can never give rise to a taking. This argument has been implicitly rejected by every case to find a taking, as the plaintiffs discuss in their reply. Pl. Reply at 25-26. Specifically, the Supreme Court in Preseault v. Interstate Commerce Comm'n, 494 U.S. 1 (1990) and its progeny in the Federal Circuit, Ladd v. United States, 630 F.3d 1015 (Fed. Cir. 2010); Ellamae Phillips Co. v. United States, 564 F.3d 1367 (Fed. Cir. 2009); Hash v. United States, 403 F.3d 1308 (Fed. Cir. 2005); Caldwell v. United States, 391 F.3d 1226 (Fed. Cir. 2004); Toews v. United States, 376 F.3d 1371 (Fed. Cir. 2004), all recognize that NITUs, by allowing for trail use, separate from rail use, can authorize uses outside the scope of a specific easement. The government's argument is rejected.

The government argues that it is entitled to summary judgment on the scope of the easement question because the subject easements are broadly-worded and, under Oregon law, are broad enough to encompass trail use.  See Def.'s Br. 43–44.  In support of its position, the government relies on several Oregon cases that have construed easements for one use to be broad enough to allow for similar uses, so long as the burden on the servient estate does not increase.  The government argues that railroad rights of way in Oregon are recognized as extremely broad when not limited to "railway purposes only" and, like public roads, can be used for all forms of transportation.  See Bernards, 248 P. at 352; Powers v. Coos Bay Lumber, 263 P.2d 913, 944 (Or. 1953).  The government also relies on cases that hold that easements for public roads allow for cycle and pedestrian use even without express mention.  See Rogers v. Lane Cty., 771 P.2d 254, 258 n.7 (Or. 1989) ("[cyclists] have always been highway users . . . ."); cf. Cotsifas v. Conrad, 905 P.2d 851, 853 n.2 (Or. Ct. App. 1995) (allowing all mechanisms of transport on an easement).  The government further relies on Northwest Natural Gas Co. v. City of Portland, 690 P.2d 1099 (Or. Ct. App. 1984), to suggest that a railroad right of way was later converted to a public highway demonstrates the breadth of railroad easements.

The plaintiffs argue in response that they are entitled to summary judgment on the grounds that the subject easements are limited to what is reasonably necessary and convenient for the intended purpose of the easement, and easements granted to railroads do not encompass trail use.  See Pls' Resp. 20 (citing Minto v. Salem Water, Light & Power Co., 250 P. 722 (Or. 1926); Fendall v. Miller, 196 P. 381 (Or. 1921); Principles of Ore. Real Estate Law § 3.27).  In this connection, the plaintiffs argue that easements

involving rights of way acquired by railroads are different from rights of way acquired by government entities for public highways or access.  Thus, the plaintiffs contend that the government's reliance on Northwest Natural Gas Co., Rogers, and Cotsifas, is misplaced. In support of their position, the plaintiffs rely on Or. Rev. Stat § 164.255, which in 1971 criminalized use of railway corridors for recreation, providing that "a person commits the crime of criminal trespass in the first degree if the person . . . [e]nters or  remains unlawfully upon railroad yards, tracks, bridges or rights of way."  Plaintiffs also explain that from as early as 1894, the Oregon Supreme Court has held that rail lines are not available for use by pedestrians, deciding that "[t]he track is the private property of the company, and was not built to be used as a highway for pedestrians." Ward v. S. Pac. R.R., 36 P. 166, 168–69 (1894).  In such circumstances, the plaintiffs contend that the subject easements would not have contemplated or authorized trail use by hikers and cyclists.

Given the law of Oregon, the court agrees with the plaintiffs that the easements granted to the railroad more than 100 years ago would not have contemplated public recreational use.  In this connection, the court finds the government's reliance on cases referencing the broad uses of public highways unpersuasive.  Railroad corridors are not public highways.  To the contrary, Oregon law clearly states that rail traffic and pedestrian or cycling uses within the same space are incompatible.  Thus, it would have been clear at the time these easements were granted to the railroad that public trail use of

the corridor for recreation would be outside the scope of the easements.[44]   Accordingly,

the plaintiffs are entitled to summary judgment with regard to the easements conveyed in

the eighteen deeds identified above.

**III.    CONCLUSION**

For the foregoing reasons the court **GRANTS-IN-PART** and **DENIES-IN-PART**

the parties' motions for summary judgment.   The parties shall have until **October 23,**

**2015** to file a proposed schedule for resolving the case.   The court will thereafter

schedule a status conference to finalize the parties' next steps.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

[44] Having concluded that trail use is incompatible with rail use, the court does not reach the government's argument that trail use does not increase the burden on the plaintiffs' estates.